AB:GN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED WITH (347) 857-0083, THAT IS IN THE CUSTODY OR CONTROL OF SPRINT SPECTRUM L.P. | **TO BE FILED UNDER SEAL**<br><br>**APPLICATION FOR A SEARCH WARRANT FOR PROSPECTIVE AND HISTORICAL CELL SITE INFORMATION**<br><br>Case No. 19-M-867 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, GEORGE DIETZ, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with (347) 857-0083 ("the SUBJECT ACCOUNT"), with listed subscriber K. GOODE, that is in the custody or control of Sprint Spectrum L.P., a wireless communications service provider that is headquartered in Overland Park, Kansas. As a provider of wireless communications service, Sprint Spectrum L.P. is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.  The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require Sprint Spectrum L.P. to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

4.  I am a Special Agent employed by the United States Attorney's Office for the Eastern District of New York, and have been since August 2018. Prior to joining the United States Attorney's Office, I was a Special Agent with the United States Department of Housing and Urban Development, Office of Inspector General for approximately eight-and-a-half years.

5.  The facts in this affidavit come from my personal observations, my training and experience, my review of law enforcement records, and information obtained from other law enforcement officers. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.  Based on the facts set forth in this affidavit, there is probable cause to believe that violations of federal law, including Title 18, United States Code Section 1962 and Title 21, United States Code Section 841 have been committed, are being committed, and will be committed by KEITH GOODE. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

7.  The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; see 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

8. The United States, along with the New York City Police Department, is conducting a criminal investigation of KEITH GOODE regarding possible violations of Title 18, United States Code Section 1962 and Title 21, United States Code Section 841.

9. On or approximately between August 2, 2019 and September 24, 2019, an undercover officer ("UC"), based on information provided by a confidential informant, made seven controlled purchases of crack cocaine in exchange for an agreed-upon amount of cash. Each of the controlled buys followed a similar pattern: before each buy, the UC called GOODE at the SUBJECT ACCOUNT, and arranged to meet at a determined location and to purchase an agreed-upon amount of crack cocaine. Once the UC arrived at the pre-determined location and encountered GOODE, the UC purchased crack cocaine from GOODE. In total, UC paid GOODE $1,800 in cash for approximately 15 grams of crack cocaine.

10. Based on GOODE's known associations, and information gathered from prior investigations conducted by the NYPD, I believe that GOODE is a member of the Bloods gang.

11. On or about September 17, 2019, the Honorable Ramon E. Reyes, United States Magistrate Judge, issued a phone pen register and trap and trace device for the SUBJECT ACCOUNT.

12. The historical cell-site information for the SUBJECT ACCOUNT will allow law enforcement to determine where and from whom GOODE received the illegal narcotics that he is unlawfully possessing and distributing in New York and provide further evidence regarding the sale of narcotics that occurred in each of the controlled transactions with the UC. In addition, the NYPD intends to have the UC engage in additional controlled buys of narcotics from GOODE over the course of the next month. Based on my training and experience, I believe that

3

prospective cell-site information will allow law enforcement to track GOODE's location to determine further evidence of the locations where drug sales are occurring and evidence of sources of supply and potential stash houses, and to allow law enforcement to locate co-conspirators.

13. In my training and experience, I have learned that Sprint Spectrum L.P. is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

14. Based on my training and experience, I know that Sprint Spectrum L.P. can collect cell-site data on a prospective basis about the SUBJECT ACCOUNT. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless

4

providers such as Sprint Spectrum L.P. typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

15.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

16.     Based on my training and experience, I know that wireless providers such as Sprint Spectrum L.P. typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as Sprint Spectrum L.P. typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the

SUBJECT ACCOUNT's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the SUBJECT ACCOUNT, without geographic limit, for a period of forty-five days (45) days pursuant to 18 U.S.C. § 3123(c)(1).

18. I further request that the Court direct Sprint Spectrum L.P. to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Sprint Spectrum L.P., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

19. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

GEORGE DIETZ
Special Agent
Department of Justice

Subscribed and sworn to before me on _Sept 27_, 2019

s/ Gold

HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular device assigned (347) 857-0083 ("the SUBJECT ACCOUNT"), with listed subscriber Keith Goode that is in the custody or control of Sprint Spectrum L.P., a wireless communications service provider that is headquartered at Overland Park, Kansas.

\

## ATTACHMENT B

**Particular Things to be Seized**

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.     The following information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period June 1, 2019 through the present:

        i.     Names (including subscriber names, user names, and screen names);

        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.   Local and long distance telephone connection records;

        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.     Length of service (including start date) and types of service utilized;

        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii.      Means and source of payment for such service (including any credit card or bank account number) and billing records; and

      ix.      All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

b.    Information associated with each communication to and from the SUBJECT ACCOUNT for a period of 45 days from the date of this warrant, including:

      i.      Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

      ii.      Source and destination telephone numbers;

      iii.      Date, time, and duration of communication; and

      iv.      All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the SUBJECT PHONE will connect at the beginning and end of each communication.

II. **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code Section 1962 and Title 21, United States Code Section 841 involving KEITH GOODE during the period June 1, 2019 through November 11, 2019.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.